**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Karen DANOS, Defendant–Appellant.**

No. 00–6781.

United States Court of Appeals,
Sixth Circuit.

Nov. 22, 2002.

Before KEITH, MOORE, and GILMAN, Circuit Judges.

KEITH, Circuit Judge.

On this appeal, Defendant–Appellant, Karen Danos ("Danos") appeals her sentence following her guilty plea to conspiracy to distribute cocaine base. Specifically, Defendant–Appellant argues that the district court erroneously denied both of her motions for downward departure based upon U.S.S.G. §§ 5K2.0 and 5K2.13 respectively.

For the reasons set forth below, we AFFIRM the sentence imposed by the district court.

## I. BACKGROUND

Defendant, Danos, was named in a one-count bill of information charging conspiracy to distribute crack cocaine. Danos waived her right to a jury trial and entered a guilty plea to the conspiracy charge. The United States Probation Office's pre-sentence report showed that Danos was a career offender based upon two prior felony drug distributions. (J.A. Vol. 2 at 77). As a result of her career offender status, Danos' offense level was determined to be 37. Danos received a three-point downward adjustment for acceptance of responsibility, resulting in a final offense level of 34. Coupled with her criminal history category of six, Danos' guideline range was 262 to 327 months.

Prior to sentencing, the government invited Danos to attend two proffer sessions for the purpose of investigating her involvement in various drug distribution activities. After these sessions, and after Danos provided the government with information about other prospective defendants, the government moved for a downward departure pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 5K1.1 for substantial assistance to authorities. Danos also moved for downward departure based upon: (1) U.S.S.G. § 5K2.0, on the grounds that the career offender status over-represented the seriousness of her criminal history; and (2) U.S.S.G. § 5K2.13, on the grounds that she had a diminished mental capacity at the time of the offense.

At sentencing, Danos called two witnesses: her mother, Linda Tapley, and a clinical psychologist, Dr. Kenneth Nickerson. Ms. Tapley testified that she had been married three times, and that the first husband, Danos' father, had been killed in Vietnam when Danos was two years old. (J.A. Vol. 1 at 48). After that,

Ms. Tapley remarried and had two more children with her second husband. Ms. Tapley testified that there was favoritism shown to the second husband's two children and that the second husband abused Ms. Tapley and Danos. (J.A. Vol. 1 at 49–51). Ms. Tapley then joined the military, where she had Danos evaluated for emotional problems. (J.A. Vol. 1 at 51–52). Ms. Tapley also testified that Danos became involved in a relationship with an abusive man at age 16, and that this man repeatedly beat Danos and stalked her. (J.A. Vol. 1 at 52–53). Ms. Tapley stated that Danos, during her teenage years, lived alone in New Orleans in a run-down, drug-infested section of that city. (J.A. Vol 1 at 53–54). Ms. Tapley testified that "all the years of abuse" when Danos was a child "took its toll on [Danos]." (J.A. Vol. 1 at 55).

Danos also called Dr. Nickerson to testify about an evaluation he had performed on her. Dr. Nickerson stated that Danos suffered from a major depressive disorder, feelings of worthlessness, recurrent experiences of abandonment, physical abuse, traumatic betrayal, and drug abuse. (J.A. Vol. 1 at 57–58). Dr. Nickerson also testified that Danos may have been suffering from a reduced mental capacity at age 16, and that it was common for someone suffering from reduced mental capacity to self-medicate with drugs and alcohol. (J.A. Vol. 1 at 58–59).

The district court denied Danos' motions for downward departure. The district court stated that the career offender status did not over-represent the seriousness of "her considerable history." (J.A. Vol. 1 at 66). The district court noted that Danos had an "extensive and recent record," and that the record encompassed more than just drug offenses. (J.A. Vol. 1 at 66). Morever, the district court stated that Danos was the "kind of person" for

which the career offender provisions were designed, noting that there was a "high risk of recidivism based upon her situation." (J.A. Vol. 1 at 66).

With respect to the diminished capacity argument, the district court agreed that Danos had "many problems, quite frankly, and while they are arguably horrendous, nonetheless, they are not that different from many of the people that appear before this Court." (J.A. Vol. 1 at 67). Nor did the court believe that she had "significant reduced mental capacity." (J.A. Vol. 1 at 67). Furthermore, the district court found that there was a "need to protect the public" in the instant case, and that some of "her problems may have stemmed also from her voluntary drug use." (J.A. Vol. 1 at 67).

The district court, however, granted the government's motion to depart downward for substantial assistance to authorities. The district court then sentenced Danos to 144 months in prison and supervised release for 8 years. Danos thereafter filed this timely appeal, arguing that the district court erred in denying her motions for downward departure.

## II. STANDARD OF REVIEW

We lack jurisdiction to review the refusal of a district court to grant a downward departure if the district court understood the extent of its authority and correctly applied the Sentencing Guidelines. *United States v. Crouch*, 288 F.3d 907, 910 (6th Cir.2002). We will presume that the District Court understood its discretion to depart, absent clear evidence in the record to the contrary. *Id.*

## III. ANALYSIS

We lack jurisdiction to review the district court's decision not to grant Danos' motions for downward departure because the district court understood that it had the authority to depart downward based on Danos' career offender and diminished capacity arguments. It takes no more than a cursory review of the transcript of the sentencing hearing to determine that the district court fully understood its authority to depart based on Danos' § 5K2.0 and 5K2.13 arguments. The district court specifically stated that, based on her extensive and recent criminal record, her status as a career offender was not over-represented. Moreover, the district court stated that it did not believe that Danos had a diminished mental capacity to warrant § 5K2.13 downward departure. These specific factual determinations clearly indicate that the district court understood that it had the authority to depart on the basis of Danos' motions, but that it concluded that departure was unwarranted. We thus lack jurisdiction to review the district court's refusal to grant Danos' motions for downward departure. *Crouch*, 288 F.3d at 910.

Danos contends that the district court should have taken into consideration the combination of factors—over-representation of her criminal offender status and her diminished mental capacity—in determining whether she was entitled to a downward departure. She cites *United States v. Coleman*, 188 F.3d 354, 358 (6th Cir.1999), in support of the proposition that district courts may consider the combination of factors, as well as consider the factors standing on their own, in deciding whether to grant motions for downward departure. Danos argues that the district court failed to understand its authority to consider the combination of factors in determining whether to grant her motions for downward departure. We reject this argument. There is a presumption that a district court understood its discretion to depart. *Crouch*, 288 F.3d at 910. Because Danos has not put forth any evidence to the contrary, we presume that the district court understood its discretion to depart based on the combination of factors.

This presumption should also stand when we consider that the district court carefully evaluated and rejected both of the factors that constituted Danos' motions for downward departure. Therefore, we find no error in the district court's decision not to take into consideration the combination of factors in determining whether Danos was entitled to a downward departure of her sentence.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the Honorable R. Allan Edgar, Chief Judge, United States District Court for the Eastern District of Tennessee, denying Defendant–Appellant Danos' motions for downward departure of her sentence.

Before NORRIS and CLAY, Circuit Judges; and O'MEARA, District Judge.[*]