**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Aaron SOLINGER, Defendant–
Appellant.**

**No. 10–6217.**

United States Court of Appeals,
Sixth Circuit.

March 5, 2012.

Before: BOGGS and GIBBONS, Circuit Judges, and RUSSELL, District Judge.*

JULIA SMITH GIBBONS, Circuit Judge.

Defendant–Appellant Aaron Solinger pled guilty to bank robbery in violation of 18 U.S.C. § 2113(a). At his sentencing hearing, the district court denied his request for a departure under the aberrant behavior Guidelines provision, U.S.S.G § 5K2.20. When explaining its reasoning, the district court made an ambiguous statement that could be interpreted as showing that it mistakenly believed that it was prohibited from granting this departure under the Guidelines. The district court ultimately sentenced Solinger to 46 months' imprisonment, which was at the top of the Guidelines range. It also ordered Solinger to pay restitution for collateral injuries suffered by a bank teller as a result of the robbery without first notifying the parties that restitution would be an issue at sentencing. Solinger appeals the denial of the aberrant-behavior departure, the substantive reasonableness of his sentence, and the order of restitution. For the reasons that follow, we remand to the district court for determination of the restitution issue and affirm the district court's sentence of imprisonment.

I.

On March 29, 2010, Solinger robbed the Fifth Third Bank in Madison, Tennessee. About a week before the bank robbery, Solinger had lost his job as a quality-assurance software technician. He normally would have been paid on the March 29, and he was attempting to hide the fact of his unemployment from his fiancée with whom he was living.

Between 1:00 and 2:00 p.m. on the day of the robbery, Solinger went to a public library and typed out a demand note. The demand noted stated:

Do not hit any alarms or people will die, including you. Treat this like a normal transaction, and put the money in the bag, but not all of it. If I get a dye pack or a tracking device, I will kill you, and

---

* The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

it isn't worth your life. Put money from the top and bottom drawer into the envelope, but do not pull all of it—and I repeat, do not give me a dye pack or a tracker, or you will not make it home tonight alive.

The word "alarms" was misspelled in the original typed note and was scratched out and spelled correctly in pen.

After driving by a number of banks and choosing not to go in, Solinger passed the Fifth Third bank on his way home and decided to rob it. Around 4:28 p.m., he entered the bank and handed the teller the demand note. The teller complied with the demand, giving Solinger approximately $2,850 in cash from a cash drawer. After leaving the bank on foot and attempting to evade the police, Solinger was captured by Nashville Police Department officers and taken into custody. While in custody, he admitted to committing the robbery.

On June 14, 2010, the defendant pled guilty to a one-count indictment charging him with bank robbery in violation of 18 U.S.C. § 2113(a). At the sentencing hearing, Solinger argued that because the robbery did not involve significant planning, he had led an otherwise law-abiding life, and his crime marked a clear deviation from this lifestyle, his crime should be considered aberrant behavior, and the district court should depart downward under U.S.S.G § 5K2.20. The government argued that this was not an exceptional case and that Solinger did not meet the first two elements of the aberrant-behavior departure guideline.

The district court ultimately denied the request for a departure under U.S.S.G § 5K2.20, reasoning:

Well, as to the departure under 5K2.20(9)(b), the heart of this offense was, of course, the note. And given the language in the note, which is a little bit more extensive than I see in most of the bank robbery cases carried out through the use of a note, it does show that this offense was—how this offense was going to be carried out was thoroughly thought out. Limited duration. I think that everything occurs within a relatively short time frame. I think that element is met. It is a marked deviation from his otherwise law-abiding life.

But the tipping fact, in the Court's view, is that it can't be a departure prohibited on certain factors in (c). Although there's no serious bodily injury or death, the Court can't help but observe that, from the victim's statements, there were some serious mental injuries. So I'm going to deny the request for a downward departure.

The victim to whom the court was referring was Peggy Clark, the teller who received the demand note from Solinger and who had submitted a victim statement to the court. Clark later testified at the sentencing hearing as well. She asserted that the robbery had negatively affected her life in a number of ways, including having to pay someone to accompany her and her daughter on trips outside the home due to her anxiety and having to retake two college courses she failed after the robbery.

After denying the departure, the district court calculated Solinger's offense level as 21 and his criminal history category as I, which resulted in a Guidelines range of 37 to 46 months of imprisonment. Defense counsel had requested that the district court impose a sentence of 24 months, while the government asked for a sentence at the higher end of the Guidelines range. After hearing from the government, defense counsel, and Solinger, the court then weighed the sentencing factors under 18 U.S.C. § 3553(a). It noted a concern for the impact that the crime had on Clark and stated that, given the note used, this was a particularly serious offense. The

court also expressed doubt that Solinger would likely be a recidivist and that his actions were surprising given his prior history. In response to a request for a downward variance, the court asserted, "I don't think anybody is arguing it's an aberration. I mean, there's no prior criminal record. It happened over the period of a day. But I think that the real thrust of the Government's contention is on the extent of the harm caused." The court denied the request for a variance and sentenced Solinger to 46 months' imprisonment.

Without request from the government or Clark, the court also ordered Solinger "to reimburse the victim [Clark] in this case for the collateral financial expenditures she has employed, she's had to pay, as a result of this." The court did so despite the fact that the PSR concluded that the defendant did not owe any restitution and the probation office had recommended no restitution. Defense counsel objected on the basis that she had no notice on this issue. The court overruled her objection and stated that the restitution was to be administered by a process in which Clark quantified her expenses, sent them to the probation office, and the probation officer then sent them to the clerk. Finally, the district court also asserted that if Solinger had "any serious objection to the amounts," he could file a motion to modify the conditions of his supervised release.

## II.

■ District court orders of restitution are reviewed for abuse of discretion, while a district court's application of a restitution statute is reviewed *de novo*. *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir.2001). Solinger challenges the district court's application of the Victim and Witness Protection Act ("VWPA") restitution statute, 18 U.S.C. §§ 3663–64. Before an order of restitution can be awarded, pursuant to the VWPA, a district court is required to first:

> order the probation officer to obtain and include in its presentence report … information sufficient for the court to exercise its discretion in fashioning a restitution order. The report shall include, to the extent practicable, a complete accounting of the losses to each victim, any restitution owed pursuant to a plea agreement, and information relating to the economic circumstances of each defendant.

18 U.S.C. § 3664(a). Further, at least 60 days prior to sentencing, the government is required to "promptly provide the probation officer with a listing of the amounts subject to restitution." *Id.* at § 3664(d)(1).

In this case, the PSR stated that restitution was not an issue, both in the victim-impact and the recommendations sections. Moreover, both parties only learned of the victim teller's statement submitted to the district court at the beginning of the sentencing hearing. As a result, and as the government concedes, Solinger was not afforded adequate notice under the VWPA that restitution would be at issue in his case, and remand on this restitution issue is required.[1]

---

**1.** Solinger also argues that the district court failed to specify the amount of restitution owed and improperly delegated its duty to set a final restitution amount to the U.S. Probation Office. The district court stated that the restitution was to be administered by a process in which Clark quantified her expenses, sent them to the probation office, and the

probation office would then send them to the clerk, with Solinger having to file a motion to modify the conditions of supervised release if he had "any serious objection to the amounts."

The VWPA provides that "[i]n each order of restitution, the court shall order restitution to each victim in the full amount of each vic-

## III.

 Solinger next argues that the district court incorrectly interpreted and applied U.S.S.G § 5K2.20, the Sentencing Guidelines provision governing a downward departure based on aberrant conduct. The government maintains that the district court correctly understood and applied the aberrant-behavior guideline and that the court, in its discretion, merely chose not to grant the departure.

"When reviewing the district court's application of the United States Sentencing Guidelines, this court reviews its factual findings for clear error and its legal conclusions *de novo." Weinberger,* 268 F.3d at 351. A district court's decision not to grant a departure under the Guidelines is only appealable if the district erroneously believed that it lacked the discretion to do so. *United States v. Jones,* 417 F.3d 547, 550 (6th Cir.2005). "The district court's determination that it lacked authority to depart downward is considered an issue of Guidelines interpretation that we review *de novo." United States v. Prince,* 214 F.3d 740, 766 (6th Cir.2000). "We examine the sentencing hearing transcript to determine whether the district court's refusal to depart downward was an exercise of discretion or a legal determination that it lacked the authority to depart." *Id.* Finally, we presume that a district court understands its discretion to grant a departure, absent clear evidence to the contrary. *United States v. Crouch,* 288 F.3d 907, 910 (6th Cir.2002).

United States Sentencing Guideline § 5K2.20 provides that a district court may depart downward where a defendant "committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life." U.S.S.G. § 5K2.20(b). Further, departure under this aberrant-behavior provision is prohibited under certain circumstances, including where "[t]he offense involved serious bodily injury or death." *Id.* at § 5K2.20(c)(1). The term "serious bodily injury" is defined in the application notes as having the meaning given in the Commentary to U.S.S.G § 1B1.1. U.S.S.G. § 5K2.20, Application Note 1. Section 1B1.1 provides that "serious bodily injury" means "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1, Application Note 1(L).

When the district court explained why it declined to apply the aberrant-behavior downward departure, it appeared to be working its way through the § 5K2.20 guideline requirements, addressing each element in turn. The court first stated that the "heart of this offense was ... the note," that the language in the note was "a little bit more extensive" than the court had seen in other bank robbery cases using a demand note, and that it showed that the offense was "thoroughly thought out." While this does not precisely mirror the "significant planning" language of the first requirement listed in § 5K2.20(b), it is reasonable to infer from these statements that the district court found that Solinger

tim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). This court has held that while it is permissible under the VWPA to delegate the setting of a restitution payment schedule to a probation officer, the district court must first establish the amount of restitution. *United States v. Butler,* 297 F.3d 505, 518–19 (6th Cir.2002) (citing *Weinberger,* 268 F.3d at 360). Thus, remand of the restitution issue is necessary on this basis as well.

failed to meet this first element of the provision. The district court then concluded that the offense "occurr[ed] within a relatively short time frame" and that it represented "a marked deviation from his otherwise law-abiding life," thus finding that Solinger had met the second and third elements of subsection (b) of the guideline. Finally, the district court went on to state:

> But the tipping fact, in the Court's view, is that it can't be a departure prohibited on certain factors in [subsection] (c). Although there's no serious bodily injury or death, the Court can't help but observe that, from the victim's statements, there were some serious mental injuries. So I'm going to deny the request for a downward departure.

Subsection (c) prohibits the application of the departure only if the offense involved serious bodily injury, which includes only serious *physical* injuries. No one suffered any physical injuries in the course of the bank robbery. Indeed, the district court acknowledged that there was no serious bodily injury or death involved in this case. This fact rendered subsection (c)'s prohibition on the grant of a departure under this guideline inapplicable.

The meaning of the court's last statement, however, remains ambiguous. It is unclear as to whether it shows that district court believed it was prohibited from granting a departure by subsection (c) or whether the court understood that it was not prohibited under this subsection and simply exercised its discretion not to do so. As Solinger argues, the stated rationale, especially the first sentence in which the court asserts that this was a "tipping fact," could show that the court believed that its discretion to grant the departure was somehow constrained by subsection (c) even though there was no serious bodily injury or death. Under this interpretation, the district court would have been mistaken about the extent of its authority to depart under the Guidelines, the panel would have the ability to review this issue, and remand would be necessary.

On the other hand, as the government asserts, the district court might have properly understood that the offense did not meet the requirements of subsection (c) and that it was not constrained by the subsection in this case. The district court's use of the phrase "[a]lthough there's no serious bodily injury or death," could be interpreted as a signal implying that it understood that this subsection did not limit its discretion to grant the departure. The district court may have referenced subsection (c) because it believed that it evinced an underlying policy in which the suitability of granting a departure decreased as the seriousness of the offense increased. Under this interpretation, the district court referenced § 5K2.20(c) simply to bolster or further explain its discretionary decision to deny the departure. Furthermore, the district court had already concluded that the demand note indicated that this offense was "thoroughly thought out," which was a reasonably clear finding that Solinger had not met the first requirement listed under U.S.S.G. § 5K2.20(b).

The true meaning of the court's statements is difficult, if not impossible, to determine. In such circumstances, because there is no clear evidence in the record to the contrary, Solinger cannot overcome the presumption that the district court understood its discretion to grant the departure. *See Crouch,* 288 F.3d at 910. There is no clear evidence that the district court misinterpreted or misapplied the aberrant-behavior provision. Accordingly, we may not review the district court's denial of Solinger's request for a downward departure under the aberrant-behavior guideline, U.S.S.G. § 5K2.20. *Id.* ("We may not

review the refusal of a district court to grant a downward departure if the district court understood the extent of its authority and correctly applied the Sentencing Guidelines.").

## IV.

Solinger also challenges the substantive reasonableness of his sentence. The reasonableness of a sentence is reviewed for abuse of discretion. *Gall v. United States,* 552 U.S. 38, 46, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). A sentence may be substantively unreasonable if it is selected arbitrarily, based on impermissible factors, fails to consider pertinent Section 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor. *United States v. Webb,* 403 F.3d 373, 385 (6th Cir.2005). When a sentence falls within the Guidelines range, a presumption of reasonableness applies. *United States v. Vonner,* 516 F.3d 382, 389 (6th Cir.2008) *(en banc).* "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall,* 552 U.S. at 51, 128 S.Ct. 586.

Solinger first argues that his sentence is substantively unreasonable due to the district court's incorrect application of the Sentencing Guidelines in analyzing the aberrant-behavior departure provision. He argues that this resulted in a sentence that was greater than necessary, which is contrary to the policy set forth in 18 U.S.C. § 3553(a). As discussed above, because the record does not contain clear evidence that the district court incorrectly interpreted or applied the aberrant-behavior departure provision, Solinger has not shown that his sentence was an abuse of discretion on these grounds.

■ Solinger next argues that his sentence is substantively unreasonable because the district court focused primarily on a single factor under § 3553(a), namely the impact his crime had on Clark, the victim teller. Solinger does not establish, however, that the district court gave an unreasonable amount of weight to this factor. Because the sentence was within the range recommended under the Guidelines, it is presumed to be reasonable, and Solinger cannot overcome this presumption. *See United States v. Hunley,* 290 Fed. Appx. 884, 886 (6th Cir.2008) (holding that a defendant's arguments that he had no criminal record, was fifty-one years old, had major health problems, served honorably in the military, and that the district judge gave undue weight to a single factor were insufficient to rebut the presumption of reasonableness accorded his within-Guidelines sentence).

The district court characterized Solinger's behavior as "aberrant," but it refused to grant a variance or a sentence at the lower end of the Guidelines range on these grounds, stating "even though it's aberrant, it is also an extraordinary robbery, given the nature of the note and the actual impact that it actually had." The court also examined the conditions of his environment, the financial strains Solinger was under, the need for deterrence, and the need to protect the public, finding that while these factors weighed in Solinger's favor, they were insufficient to warrant a shorter sentence. While the court did place great weight on the impact the crime had on the victim teller and her family, it seemed to be doing so to underscore the seriousness of this offense. The court considered all the pertinent factors under § 3553(a) and found this to be an extraordinary case that warranted a sentence of 46 months' imprisonment, which was at the high end of but still within the Guidelines range. The fact that Solinger would have preferred that the court had performed

this balancing differently is insufficient to show that his sentence was substantively unreasonable. *See United States v. Trejo–Martinez,* 481 F.3d 409, 413 (6th Cir.2007); *United States v. Jackson,* 466 F.3d 537, 540 (6th Cir.2006) ("The fact that the district court did not give the defendant the exact sentence he sought is not a cognizable basis to appeal, particularly where the district court followed the mandate of section 3553(a) in all relevant respects."). Accordingly, we affirm the sentence imposed by the district court.

## V.

For the reasons provided above, we remand the case on the restitution issue and affirm the sentence of imprisonment imposed by the district court.